Morning, Mr. Kitchens. Yes, Your Honor. Good morning. If it pleases the court, my name is Trey Kitchens. I represent Adam and Eve Jonesboro, and we are the appellants in this matter. Your Honor, as a roadmap of how we're going to address this argument, there are three points I'm going to speak to. First of all, that the district court's ruling that ACA 14-1302 is not a content-based restriction of free speech and would therefore be subject to strict scrutiny is inappropriate. Second, is the statute itself is unconstitutionally vague. And finally, the application of this statute to my client specifically was violative of my client's equal protection rights. Your Honors, both the court and the appellee in this case, if you look at the argument, and the court did a bit of a unique ruling, they said its ruling from the bench was in fact the order that we're appealing from. But in the oral arguments and in the ruling of the court, on nine separate occasions, both the appellee and the court argued that the City of Renton case and the Alameda bookstore case controlled as Supreme Court precedent for this particular issue. Our position is that is inaccurate. First of all, if you look at the City of Renton versus Playtime Theater case, this is a case decided in 1986, and it talked about secondary effects of adult theaters and the fact that the City of Renton was entitled to rely on other findings of other cities, specifically the Supreme Court ruling in the State of Washington and the North End Cinema opinion about adult theater zoning. It is undisputed that my client had no videos for sale. It is not a theater. There was no live entertainment. So the City of Renton case, and again, City of Renton goes on to talk about that you have to rely on evidence from other places to make the determination about this particular level of scrutiny for a Supreme Court issue on First Amendment. Counsel, I want to ask you about that point. Doesn't that hurt your case, not help it? In other words, if you were selling, if there was the sale of books or videos, there would be a potential First Amendment interest here. But my understanding is those things are not being sold and that's pushed in the briefs. And so I don't quite understand what the First Amendment interest is at all. There's no expressive conduct. There's no speech because there's no videos or other artistic components. And so what is the First Amendment issue? Your Honor, the issue is this. What the district court did in their justification of upholding the statute and its application to my particular client was they all said, including the judge, said specifically City of Renton and Alameda Books controls. Our position is it is what is being sold is the speech. While it's not a book and while it's not a video or a movie, we do sell about 30 percent of our product is a sexually related product. Counsel, what case establishes that the products you're selling are speech or expressive conduct? Your Honor, forgive me, Your Honor, I wasn't prepared for that question. You'll have to indulge me. Your Honor, it's content-based because they're objecting to what is being sold because of the purposes that it is being used for. And Simon & Schuster v. Members of New York State talks about when you have a content-based regulation, which we believe the one in question, the ACA 14-1302, it is content-based. It's talking about sexually related conduct or sexually related products. Both the court and the appellee both contend that my client is an adult bookstore and that's why the statute applies to them. If the court rules that we're not an adult bookstore, the statute doesn't apply and this argument is over because what they ruled is moot. They made, the court made the determination that this is a sexual related store and therefore subject to 14-1302. Well, let me, I want to follow up on, because that was the road I was going down, what Judge Kobe has asked. Suppose, let's get away from the sexual paraphernalia issue, but let's suppose that you want to open a gun store right next to an elementary school. And zoning laws don't allow a gun store right next to an elementary school. But I can't figure out what the speech component is. I mean, there may be some other issue there like takings or some, you know, regulatory taking or something like that. But I can't figure out what the speech component is and sort of the same thing applies here. I can't figure out what First Amendment interest there possibly is in opening up a store that contains sexual paraphernalia. Sure, and Your Honor, again, if your position and Judge Kobe's position is true, that's fantastic because we win. Because the statute that they used to preclude my client from opening is specifically addressed to sexual bookstores. But the statute covers the sale of these sorts of sexual devices too, right? So, I mean, you still fall within the statute's definition, according to my recollection, of an adult bookstore. It's just an adult bookstore that's not engaged in a particular kind of expressive speech. The sale of the product is what got us into the issue. And then you go down the road of the issue of principle and the fact that the statute itself has issues about how much is principle, how do you determine principle. If you recall in the record, the court went through kind of an exhaustive inquiry about the percentages. But that's your second argument, right? So it's not clear to me that if there's no expressive speech that you win on the First Amendment. If there's no expressive speech, then the statute wouldn't apply because they're making a determination that this is a bookstore, that this is an adult bookstore. There is a specific finding by the judge that this is an adult bookstore pursuant to the statute. If the court rules that we're not an adult bookstore, we argue then we would not be subject to the statute because the statute specifically says adult bookstore. But that's a definition under state law. I mean, that doesn't define what the First Amendment covers. It's not as if they said – I think your argument would have merit if they said anything that's covered by the First Amendment or where there's a speech component, they can't open up within a thousand feet of this, that, or the other thing. Then you'd have a pretty good argument. But all we have is a definition that includes with an adult bookstore paraphernalia and other sexual items. I don't – I guess I'm still not tracking what you're saying. Yes, sir. And I'm probably not tracking your question, Your Honor. Fair enough. My issue is the fact that the court ruled and held on nine separate occasions in its ruling. City of Renton is what is – he said the reason I'm ruling this way is the City of Renton case and the Alameda bookstore case. That's what he specifically found repeatedly. That's what they've argued in their briefings. That's been the standard throughout this. If it is not a speech issue and there is no First Amendment component and we can sell whatever we want, our position would then be that this statute doesn't apply to us. They have said the justification for this statute, the reason we get to use this statute, is because these terrible secondary effects, which are related to adult theaters – and we know they're related to adult theaters because Renton is only about adult theaters and Alameda is only about adult theaters. And most importantly – and, Your Honor, this is something I've had to deal with every time I've been in front of y'all – there is zero evidence, not a scintilla of evidence, about anything about secondary effects. They have presented no evidence whatsoever about the secondary effects about a retail establishment that 30 percent of what they sell is sexual in nature. There's none. You can't find it. So, City of Renton and Alameda Books both held there has to be evidence for the basis of the zoning requirement. But don't you think that – and maybe there's no evidence – but don't you think the same secondary effects that would apply to somebody – to a store that sells videos, pornographic videos, erotica and other such things would apply equally to a store that sells sexual paraphernalia? Absolutely not. And let me speak to that, Your Honor. You just said in the civil rights case we just talked about, you talked about comparators. This Court has ruled so many times in civil rights cases when you're comparing things, they've got to be alike in all relevant respects. And I understand those are comparators in civil rights cases. But in this particular case, the findings – and, again, your point about wouldn't you expect. This Court doesn't base on wouldn't you expect. There's no judicial notice of secondary effects. There has to be evidence. And there has been none. We can all assume things. But in my experience, you can't assume something that's a basis of a ruling. If you're going to make a finding, the finding has to be based on evidence. And the appellees presented no evidence. The Court cited no evidence that it was relying on. They merely held up Alameda Books and Renton and said these are the standards and, therefore, we can do it, not realizing that those two cases specifically talked about – and Alameda Books talks about – the plaintiff succeeds in casting doubt on the municipality's rationale in either matter. Burden shifts back to the municipality to supplement the record with evidence renewing the theory that justified its ordinance. There has been absolutely no evidence. It was spoken about one time in the oral record that when the statute was written, it talked about secondary effects. It was merely the mention of the phrase secondary effects. It didn't say these are the secondary effects. These are the studies we're relying on. None of that was presented to the Court, so there's no basis. Assuming Alameda applies, which we contend it doesn't, then there was no basis for the finding that Alameda justifies the statute. Counsel, is this part of your First Amendment argument or is this part of your equal protection argument? Both. What's the standard we apply on the equal protection side? Your Honor, when we're looking at the equal protection issue, we're talking about – first of all, our position is the statute in and of itself is invalid. Second, the application of this statute to our client is invalid because there are other parties selling the exact same things throughout Jonesboro within the same distance to schools and churches and things of that nature. I take it that's your equal protection? Yes, sir. And what's the standard that we review the statute in? The Court's review of that statute is a de novo review. I'm not specifically asking about the standard review, but we put the state legislature to a test here. I mean, my sense is it's a rational basis test, and I'm wondering if you concede that. Yes, sir, it is a rational basis test, and let me speak to that, Your Honor. If you apply a rational basis test in this particular statute, you have to look at the fact that it's not what my client is selling because everybody conceded and it was stipulated in court. Walmart, CVS, Walgreens, all these various places sell items that are specifically sexually related as defined by statute. It's how much my client sells. So then you've got to look at how do you determine how much? Do you determine it by floor space? I don't know because the statute doesn't say. Determine it by revenue? I don't know because the statute doesn't say. Gross revenue or net revenue? I don't know because it doesn't say. The court said about this particular issue perhaps six different times in how he was going to interpret the statute. Perhaps you do it this way. Perhaps you do it that way. The statute and its application to my client is not defined because there's no definition contained in the statute. And, Your Honor, with no more questions, I'd like to reserve what's left of my time. Very well. Thank you. Thank you, Your Honors. May it please the court. My name is Dylan Jacobs. I'm an Assistant Solicitor General with the Arkansas Attorney General's Office, and I'm here representing the state as an intervener in this matter and happy to be before this court for the first time. Before I get into the presentation that I have prepared, if I could, I'd like to turn to your question, Your Honor, about whether there is a First Amendment interest in this case. And I will readily admit this is not something that the state raised below. This is not something that we pointed out in our briefs. But I do think that the discrete category of businesses that Adam and Eve falls under to fall under Act 387's purview doesn't have First Amendment protection. So this is in Arkansas Code 14-1-302, so subsection 2, subpart B, the part of the definition of an adult bookstore video that Your Honor was referring to. It's whether a store that sells as one of its principal business purposes sells an instrument, device, or paraphernalia that's designed for use in connotation with a specific sexual activity and specific sexual activities defined further down. So it was stipulated below that Adam and Eve, half of the inventory that it planned to sell was sexual devices that would fall under subpart 2B. That would account for 30 percent of its sales. And the other items that Adam and Eve was intending to sell was laundry and shoes, novelty items that just don't fall under the regulation of the statute. And so I don't think that there's a case out there that says that selling sex toys, condoms, lubricants, that those types of items get First Amendment protection. It's simple, if anything, a rational basis purview like other zoning laws get. And I will readily admit that this case was decided under the general framework in Renton for sexual-oriented businesses, which would apply to almost all of the subcategories of establishments that Act 387 regulates. I don't think if the court is disinclined to decide the case on the basis that wasn't argued in the briefs, I don't think it has to. I can readily assume that the Renton framework applies. And I think that the district court's conclusion that Act 387 satisfies that framework is common sense and should be affirmed. So like numerous state and local governments across the country, Arkansas has enacted zoning restrictions to curb the negative secondary effects of adult-oriented businesses. And Act 387 prohibits those adult-oriented businesses from opening within 1,000 feet of certain sensitive locations such as schools, child care facilities, and places of worship. Could you address opposing counsel's point that there's no evidence? I understand there to be studies, but the studies were from other municipalities. They were the same kind of studies, I think, that were submitted in some of these Supreme Court cases like Renton that we've been talking about. Is that correct, and does that meet the burden for showing the secondary effects? It is correct, Your Honor, that there are no studies that I'm aware of in the cases that the General Assembly cites, which was Alameda, Erie v. Pabst, Renton, and Young American Mini Theaters. I'm not aware of a specific study that deals with the sale of sexual devices. And the reason that there wasn't a case that they could point to for those studies would be that, again, going back to the earlier point, that this is not a category of regulation that typically falls under the First Amendment. It's contained, of course, within a statutory scheme that generally does, and all of the other. I think there's adult massage parlors that I think is something that's questionable as well. But generally, you're talking about nude live performances and things like that that are the typical kind of case that the Supreme Court and this Court have reviewed under the Renton framework. Having said that, even if we assume that the Renton framework would apply to the subcategory of regulations at issue, the Supreme Court and this Court have said that you don't need that granular evidence when you're dealing with a business that would generally satisfy what someone would think is an adult use. So I think in the Bezaps versus Mankato City case, for instance, this Court said that once a government decides to regulate adult uses, that it's not required to show evidence of specific adult uses, that as long as it's reasonably related, I think, to the kind of businesses that you're relying on the studies for, then that's okay. That's perfectly in line with Alameda's direction that very little evidence is required for governments to regulate the secondary effects of adult businesses. So the standard applying Renton would be is it reasonable for a government to think that regulating a store that only would sell sexual devices could produce the same sort of secondary effects as other adult bookstores, which were the kind of things that were at issue in Alameda books. I think that's perfectly reasonable. And again, it's going to be very difficult for a city to come up with a study, to study the secondary effects of a business that only sells sexual devices and not other adult materials like books and movies, which as a general matter, stores like Adam and Eve sell both. Adam and Eve nationally sells both, and I think it was only apparent in this case, maybe closer to the bench trial or maybe even at the bench trial, that the only items that Adam and Eve was intending to sell that would fall under the purview of this statute were sexual devices. Counsel, what about in the equal protection context, the suggestion that Walmart and Walgreens and three or four stores at any suburban mall sell the items that the appellant in this case is selling, and that at least for the purposes of a rational basis review, the studies that a legislature may rely on simply don't address why Adam and Eve is different than, say, a Spencer's Gifts, and I know that was in this case, but a Walmart, for example, the back corner of a pharmacy of a Walgreens. Well, certainly I think it is perfectly rational for a legislature to conclude that a business like Walmart, like CVS, for example, that might sell condoms and lubricants incidentally as a part of their much larger business don't produce the same sort of secondary effects that this law was targeting. So it's certainly not a business like Adam and Eve that, as stipulated here, half of its inventory were the kind of sexual devices they're trying to regulate. Even though Walmart may sell more in any given year? Certainly, Your Honor. But I think the focus of the secondary effects analysis is people walking up to a store and what are they purchasing there? Some people go to Walmart. They're buying lots of things. They're buying groceries. This is an average everyday people visit these types of stores a lot. Stores like Adam and Eve are different. People go there looking for particular products, and the General Assembly laid out the negative secondary effects that these adult businesses can generate, such as crime, illicit drug use, and everything that Section 14-1-301 discuss, and it's just not the same as a mainstream business like Walmart. I think it's perfectly fine under a rational basis analysis for the General Assembly to conclude that. And as dispensers, I think it was pretty well discussed below that the reason that dispensers didn't come within the statute, whether or not it had a principal business purpose of selling those kind of items, it was grandfathered then, which is also, I think, a perfectly rational basis for a General Assembly designing a statute to say that we're not going to upend the reliance interests of these kind of businesses. And so assuming that the written framework applies, I think the district court's finding that the statute's purpose was directed to secondary effects is perfectly permissible. I don't understand the appellant to be challenging that finding on appeal, and I think it was undisputed below that the Act doesn't foreclose adult businesses from opening in Jonesboro or anywhere else in the state, and I don't understand appellants to be challenging that finding below either. So I think the only dispute on that point is simply whether or not there was enough evidence. I think under this court's precedent in these apps, also in the ILQ case, applying the written framework in terms of the evidence that's needed, it's very little. The court said that in Alameda. Justice Kennedy, in his controlling opinion, indicated that he agreed with that, that as long as the statute is directed at ameliorating the secondary effects and not at reducing the speech, then that's fine, and it is content neutral for purposes of the written framework. Unless the court has any questions on the vagueness challenge or the equal protection, then I'll cede the balance of my time. Hearing none, thank you. Counsel for the appellant repeatedly made my point for me, arguing very little evidence is required to chin the bar under the city of Alameda or Renton, but some evidence was required. A scintilla of evidence was required, and there's none here. Not one argument was made. We didn't have to do a specific study in Jonesboro. You could have done what they did in the city of Renton, where they cited other studies that other cities had used. They didn't do that. Suppose, counsel, that we're in rational basis land. You've already conceded to Judge Kobus on equal protection. We're in rational basis land. Suppose we say there's no First Amendment interest here as well, and so we're really back in rational basis land again. The Supreme Court has made clear you don't need studies, that as long as we can hypothesize an interest, that that's good enough for purposes. So do you lose at that point? Because your main argument seems to be that there's no studies in the record or adequate studies in the record. No. First of all, let me be clear. There's nothing in the record. There's not studies. There's no arguments. There's no nothing. There is the utterance of the magic phrase, secondary gain. The court determines that the legislature has the ability to simply say, we think there might be secondary gain for a retail establishment that sells 30 percent sexually related items. And, Your Honor, this is so important, if I could diverge quickly. He kept saying half, and that proves my point about the vagueness of the statute and the fact that you can't read the statute in a plain meaning and understand what it means. We're talking about 30 percent of gross revenue. He's talking on half of individually counting items. Half is better for him than 30 percent is for me, so he gets to use that. The statute doesn't tell this court or anybody else how to interpret what they mean by principle because it's not defined. But if the court indicates that the legislature can simply say, we think there might be some secondary gains with no evidence, no evidence, because that's what we have here, then you're right. We lose. I would also address the equal protection argument. It has been undisputed that the city of Jonesboro gave my client a specific business license, not once but twice, to conduct business at the location where they are located. That was done twice. They argued that that doesn't give you the ability to open. But under the vagueness analysis, my client has to be essentially innocently entrapped into going down this road and opening this business. Isn't your vagueness argument a little bit difficult since your client markets itself as the leading national retailer of adult sexual products? Absolutely not because that's not my client. My client is Adam and Eve of Jonesboro, which is a completely different separate legal entity. And the fact that they argue about national websites is a misnomer because that's not my client. My client is Adam and Eve of Jonesboro, not selling videos. That is undisputed. Not selling anything as far as periodicals or things of that nature. The fact that other people with the same name of Adam and Eve might do something else is immaterial to this court's analysis. Is there an affiliation? Is there a franchise? There is a franchise, but this particular business doesn't do any of that. And it's important to make that distinction because when you look at what the city of Jonesboro said about this call for the privilege licenses, it was all on a wink and a nod, Your Honor. Well, we know what Adam and Eve does. They didn't know what this particular store did. They didn't know what this location was going to do. They simply said, we're not going to allow this even though we've given you a privilege license not once but twice. And if there are no more questions, that is my time. Very well. Thank you. Thank you, gentlemen. The court appreciates both your arguments and briefing. The case will be submitted in the...